IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BILLY COY COCHRAN,

    Petitioner,

v.

MATTHEW KRAMER, Warden

    Respondent.

No. C 06-0909 CRB

**ORDER REQUIRING A SUPPLEMENTAL RESPONSE**

Petitioner, a state prisoner currently incarcerated at Folsom State Prison, in Folsom, California seeks a writ of habeas corpus under 28 U.S.C. § 2254 claiming denial of his due process right to a fair trial based on a myriad of due process, structural, and evidentiary grounds.

### THE CHALLENGE TO THE CONVICTIONS ON COUNTS 5 AND 6

Petitioner alleges as his first ground for relief that he was placed in double jeopardy because he was sentenced twice for the same conduct. Specifically, Petitioner claims that he only dissuaded a witness once, but was charged twice (counts 5 and 6) and sentenced to consecutive six year terms on each count. In reviewing this claim, the Court has uncovered several inconsistencies in the record. The State's answer to the petition does not address, let alone reconcile, these disparities.

**A. The Information**

Count 5 was initially charged as an act of dissuading a witness that was to have occurred on or about May 30, 2002. See Lodged Doc. 18 at 37. Count 6 was initially

charged as an act of dissuading a witness that was to have occurred on or about June 15, 2002. See id. At the commencement of trial the prosecutor informed the trial court that the dates for counts 5 and 6 were in error and moved the trial court to amend the information to reflect that both counts occurred on June 15, 2002. See Reporter's Transcript ("RT") 62. The trial court granted the motion and ordered the amendment. See id. Thus both dissuasion counts were required to be proven to have occurred on or about June 15, 2002.

**B. State's Theory of the Crimes**

Despite the State-sought amendment, at trial the prosecutor presented the State's theory of the crimes as they were originally charged – with one dissuasion (count 5) occurring on May 30, 2002 and the second dissuasion (count 6) occurring on June 15, 2002. See RT 513 & 572.

**C. State's Answer to the Petition for Habeas Corpus**

In its answer to the habeas petition, however, the State contends that both count 5 and count 6 occurred on June 15. The State claims that Petitioner dissuaded the victim twice on that day, with the count 6 dissuasion occurring after a 30-minute break in the altercation. This understanding of events is supported only by the probation report; it is not supported by the theory of the prosecutor at trial or the trial testimony of the victim.

*1. Probation Report*

The probation report explains that Petitioner entered the victim's house on June 15 demanding $20,000. CT 325. The Petitioner then stated that if he was not paid the $20,000 he would kill her dogs and burn down her house. Id. After making this threat, Petitioner left the victim's residence but remained on the property. Id. While the Petitioner was outside, the victim began preparing a list of all the money she had spent on behalf of Petitioner to show that she no longer owed him the $20,000. See id. Petitioner then returned into the house and threatened to kill the victim. Id. These threats constitute the factual allegations that support count 4.

Petitioner then started punching holes in the walls of the house and throwing around various items. Id. He again told the victim that he would kill her dogs and burn down her

house if she did not pay him $20,000. Id. He then struck her and told her that if she called any cops or if he saw any cops he would kill her, her daughters, and the dogs. Id. These threats constitute the factual allegations that support count 5. Petitioner then walked back outside the residence. Id.

While Petitioner was outside, the victim called his wife, Becky Mata, to inquire if Petitioner had access to firearms. CT 326. Half an hour later, Mata arrived at the residence and spoke to Petitioner. Id. Petitioner then reentered the residence and began yelling at the victim again. Id. Once Petitioner left the residence, the victim called the police. Id. While the victim was on the phone with the police, the Petitioner called the victim and reminded her that if he found out she was contacting cops he would kill her. Id. This phone call constitutes the factual allegation which supports count 6.

### 2. *Victim's Trial Testimony*

Contrary to the probation report, at trial the victim claimed that no threats were made prior to the phone call to Mata. The victim explained that on June 15 she was cleaning her home when Petitioner entered the premises and demanded payment of $20,000. RT 143-44. Petitioner left the premises after he demanded she pay him the money. RT 145. During this initial contact, Petitioner is not alleged to have made any threats. RT 98.

The victim then phoned Petitioner's wife, Becky Mata, and asked if Petitioner had access to any guns. RT 145. Mata claimed he did not. See id. Mata then drove to the victim's property (where Petitioner was) and spoke to Petitioner. RT 146. Petitioner became enraged and entered the residence being abusive towards the victim and her property. RT 148. Petitioner again demanded $20,000, and the victim told Petitioner she would provide an accounting of her funds to show that she had paid more than $20,000 of Petitioner's expenses. See id. Petitioner then left the victim's home but remained on the property. Id.

The victim spent about an hour preparing the accounting and Petitioner then reentered the house. RT 149. Petitioner was still enraged and began to threaten victim, throw items around the house and at her, and cause damage to the property. RT 149-51. These threats were the basis of the count 4 charge.

3

1  Petitioner than pulled the telephone from the wall and threw it to the ground, telling
2  the victim that if she called anyone or if he saw police he would kill her. RT 152. This
3  threat appears to form the basis of the count 5 charge.

4  Petitioner then left, whereupon the victim called the police. Id. While on the phone
5  with the police Petitioner phoned the victim and she told him to leave the property. RT 153.
6  She did not tell him she was on the other line with the 911 operator. RT 154. Petitioner then
7  came back inside the house. Id. Petitioner did not make any remarks to the victim about
8  calling anybody during this contact. Id. There was no testimony from the victim to support
9  the dissuasion threat that constitutes the probation report's factual basis for count 6.

## ORDER

The probation report's discussion of counts 5 and 6 is not consistent with the evidence at trial; nor is it consistent with the State's theory at trial. In light of this record, the State's response to Petitioner's challenge to his convictions on counts 5 and 6 as duplicative is wholly inadequate. Accordingly, the State is ordered to file a further response on or before **May 15, 2009.** Petitioner may file a traverse to the State's supplemental response.

**IT IS SO ORDERED.**

Dated: April 30, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\0909\Order for supplemental briefing for count 5 and count 6.wpd