1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   BILLY COY COCHRAN,                    No. C 06-0909 CRB

11               Petitioner,              **ORDER GRANTING IN PART AND
                                          DENYING IN PART PETITION FOR
12      v.                                A WRIT OF HABEAS CORPUS**

13   MATTHEW KRAMER, Warden

14               Respondent.

15   ────────────────────────────────

16          Petitioner, a state prisoner incarcerated at Folsom State Prison, in Folsom, California

17   seeks a writ of habeas corpus under 28 U.S.C. § 2254 claiming denial of his due process right

18   to a fair trial based on a myriad of due process, structural, and evidentiary grounds.

19                          **STATEMENT OF THE CASE**

20          Petitioner was convicted by a jury of assault with a semi-automatic firearm in

21   violation of California Penal Code section 245, subdivision (b) (Count 1), being an ex-felon

22   in possession of a firearm in violation of California Penal Code section 12021, subdivision

23   (a)(1) (Count 2), criminal threats in violation of California Penal Code section 422 (Count 4),

24   and two counts of dissuading a witness by force or threat in violation of California Penal

25   Code section 136.1 subdivision (c)(1) (Counts 5 and 6).  After finding, among other facts,

26   that Petitioner had a previous serious violent incident on his record and had been placed on

27   parole only to be returned to confinement, the trial court sentenced him to twenty-seven years

28   and four months incarceration.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    On December 8, 2004, the California Court of Appeal affirmed the judgment of the

2  superior court in an unpublished opinion.  On January 3, 2004 the California Court of Appeal

3  denied Petitioner's petition for rehearing.  On February 19, 2005, the California Supreme

4  Court denied review.  Petitioner's conviction became final on May 15, 2005.

5    Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal,

6  Fifth Appellate District on April 27, 2004.  That petition was summarily denied on May 13,

7  2004 and Petitioner was instructed to file with the Superior Court.  Petitioner filed with the

8  Superior Court on July 9, 2004 and that petition was denied on July 22, 2004.  Petitioner then

9  re-filed with the Court of Appeals, Fifth Appellate District on August 20, 2004 and that

10  petition was denied on September 23, 2004.  Petitioner subsequently filed a petition with the

11  California Supreme Court on August 22, 2005 and that petition was denied on June 14, 2006.

12  Petitioner filed a second petition with the California Supreme Court on April 11, 2007 and

13  that petition was denied on October 10, 2007.

14    Petitioner then filed the instant federal petition for a writ of habeas corpus under 28

15  U.S.C. § 2254.  Per order filed on March 10, 2008, this Court found that the petition, liberally

16  construed, stated cognizable claims under § 2254 and ordered Respondent to show cause why

17  a writ of habeas corpus should not issue.  Respondent has filed an answer to the order to

18  show cause and Petitioner has filed a traverse.  The parties have each also filed extensive

19  supplemental briefing at the Court's request.

20                              **FACTUAL BACKGROUND**

21    The California Court of Appeal summarized the facts of the case as follows:

22       Donna Cochran allowed her 34 year-old son (appellant) to live in a
23    trailer on her rural property. In May of 2002 appellant came into Mrs.
     Cochran's home after she refused to give his girlfriend a ride and was
24    "yelling and carrying on." Appellant began to throw things, including the
     telephone, computer and microwave and he punched two holes in the wall.
25    He hit Mrs. Cochran on the arms, but eventually left. He returned to the
     home approximately 10 minutes later with a gun and threatened to kill Mrs.
26    Cochran's dogs. He then placed the gun to Mrs. Cochran's forehead and
     threatened to kill both her and the dogs. He pulled the gun away from her
27    forehead and as he pulled the top of the gun back a bullet fell out. Mrs.
     Cochran did not report the incident because he was her son and she did not
28    want him to get in trouble; she asked him to vacate her property within two
     days.

                                        2

On June 15, 2002, appellant got into an argument with Mrs. Cochran again about money he claimed she owed him and the fact that she wanted him to move off of her property. Appellant threatened to burn down her house and kill Mrs. Cochran and his sisters. Mrs. Cochran picked up the phone and appellant swatted it out of her hand, breaking the phone. He threatened to kill her if she called for help. Mrs. Cochran reassembled the phone after appellant left and called 911. Deputy Sherriffs (sic) responded and took appellant into custody.

Appellant's former girlfriend (now wife) Rebecca Mata testified that appellant was with her during part of the time Mrs. Cochran claimed appellant threatened her.

People v. Cochran, No. F043690, 2004 WL 2813614, *1 (Cal. Ct. App. December 8, 2004).

## DISCUSSION

I.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus 'in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

1    decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at

2    413.

3        "[A] federal habeas court may not issue the writ simply because the court concludes in

4    its independent judgment that the relevant state-court decision applied clearly established

5    federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

6    Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask

7    whether the state court's application of clearly established federal law was "objectively

8    unreasonable."  Id. at 409.

9        The only definitive source of clearly established federal law under 28 U.S.C. §

10   2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the

11   state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

12   While circuit law may be "persuasive authority" for purposes of determining whether a state

13   court decision is an unreasonable application of Supreme Court precedent, only the Supreme

14   Court's holdings are binding on the state courts and only those holdings need be

15   "reasonably" applied.  Id.

16   II.   Claims

17

18       Petitioner raises nine claims for relief under § 2254: (1) multiplicitous punishment in

19   violation of double jeopardy and due process with regards to counts 5 and 6; (2)

20   multiplicitous punishment in violation of double jeopardy and due process with regards to the

21   count 1 enhancement and count 2; (3) violation of his right to a jury trial; (4) conviction

22   based on insufficiency of the evidence; (5) violation of his confrontation rights due to

23   inflammatory hearsay evidence; (6) evidentiary error by the trial court; (7) prosecutorial

24   misconduct; (8) ineffective assistance of trial counsel; and (8) ineffective assistance of

25   appellate counsel.

26       A.    Claims 1-2: Multiplicitous Punishment

27       Petitioner was charged with one count of making a terrorist or criminal threat in count

28   4 and two counts of dissuading a witness from testifying by force or threat in counts 5 and 6.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Petitioner was sentenced to serve one year and four months for count 4 and six years each for counts 5 and 6.  Petitioner claims that he has been improperly punished twice for the same act in violation of California Penal Code § 654 and his Fifth and Fourteenth Amendment guarantee against double jeopardy.   He claims that the punishment for either count 5 or count 6 should be stayed.

Petitioner's second claim argues that he was punished twice for the same act of using a firearm, in violation of Cal. Pen. Code § 654 and his Fifth and Fourteenth Amendment guarantees against double jeopardy.  Petitioner was sentenced consecutively on an enhancement to count 1 for personal use of a firearm as well as a conviction on the count 2 charge of being a felon in possession of a firearm.  The sentence for the count 1 enhancement was three years and his count 2 sentence was 32 months.  Petitioner claims that a 32 month sentence, in addition to a three-year sentence, violates the Fifth and Fourteenth Amendment guarantee against double jeopardy.

Petitioner did not raise the double jeopardy issue in his direct appeal so the Court of Appeals decision does not address the issue.  While he raised the issue in his state habeas proceedings before the California Supreme Court, the order denying the petition did not offer a reasoned analysis of the denial.  Accordingly, this Court conducts "an independent review of the record to determine whether the state court's decision was objectively unreasonable." Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  In Benton v. Maryland, 395 U.S. 784 (1969), its protections were held applicable to the states through the Fourteenth Amendment.  The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense.  See Witte v. United States, 515 U.S. 389, 395-96 (1995).

In the federal courts the test established in Blockburger v. United States, 284 U.S. 299, 304 (1932), ordinarily determines whether crimes are indeed separate and whether

United States District Court
For the Northern District of California

1  cumulative punishments may be imposed. See Rutledge v. United States, 517 U.S. 292, 297

2  (1996); Ohio v. Johnson, 467 U.S. 493, 499 n.8. (1984).[1]  The Double Jeopardy Clause is not

3  violated if "each [offense] requires proof of a fact which the other does not." Blockburger,

4  284 U.S. at 304; see, e.g., United States v. Garlick, 240 F.3d 789, 793-94 (9th Cir. 2001)

5  (two counts of wire fraud based on two fax transmissions not multiplicitous, even though

6  only first fax was sent by defendant and first fax could have been used to prove defendant

7  caused second fax to be sent).

8         *1.    Counts 5 and 6*

9        The state court's decision was objectively unreasonable as to counts 5 and 6. Count 5

10  was initially charged as an act of dissuading a witness on or about May 30, 2002. See

11  Lodged Doc. 18 at 37. Count 6 was initially charged as an act of dissuading a witness on or

12  about June 15, 2002. See id. At the start of trial, the prosecutor moved to amend the

13  Information to reflect that both counts occurred on June 15, 2002. See RT 62. The trial

14  court granted the motion and ordered the amendment. See id. The State was thus required to

15  prove two dissuasion threats on June 15, 2002. Despite the State-sought amendment,

16  throughout trial the prosecutor presented the State's theory of the crimes as they were

17  originally charged – with one dissuasion (count 5) occurring on May 30, 2002 and the second

18  dissuasion (count 6) occurring on June 15, 2002. Even though the State's theory did not

19  match the amended charges, Petitioner was convicted of both counts of making threats to

20  dissuade a witness on June 15.

21        In its answer to the habeas petition, the State argued that in fact two separate threats to

22  dissuade a witness (count 5 and count 6) occurred on June 15 and therefore Petitioner was

23  not convicted twice for the same crime. Docket No. 23 at 9. The State claimed that the

24  count 6 dissuasion occurred after a 30-minute break in the altercation. Id. at 10. The only

25

26       [1]In Grady v. Corbin, 495 U.S. 508 (1990), the Court established a "same conduct" test,
but Grady was overruled on this point in United States v. Dixon, 509 U.S. 688 (1993), leaving

27  the Blockburger "same elements" test in place. See United States v. Wright, 79 F.3d 112, 114
(9th Cir. 1996) (finding that Blockburger test is only test for double jeopardy claim after Dixon);

28  United States v. Wolfswinkel, 44 F.3d 782, 785 (9th Cir. 1995) (finding that strict application
of Blockburger test is appropriate after Dixon).

United States District Court
For the Northern District of California

evidence it cited to support this version of the events was the probation report. Id. (citing CT 332). The facts recited in the probation report, however, are inconsistent with the evidence at trial.

According to the probation report, Petitioner entered the victim's house on June 15 demanding $20,000. CT 325. Petitioner then stated that if he was not paid the $20,000 he would kill the victim's dogs and burn down her house. Id. After making this threat, Petitioner left the victim's residence but remained on the property. Id. While Petitioner was outside, the victim began preparing a list of all the money she had spent on behalf of Petitioner to show that she no longer owed him $20,000. See id. Petitioner then returned to the house and threatened to kill the victim. Id. These threats constitute the factual allegations that support count 4 ("criminal threats"). Id.

Petitioner then started punching holes in the walls of the house and throwing various items. Id. He again told the victim that he would kill her dogs and burn down her house if she did not pay him $20,000. Id. He then struck her and told her that if she called any cops or if he saw any cops he would kill her, her daughters, and the dogs. Id. These threats constitute the factual allegations that support count 5. Id. Petitioner then walked back outside the residence. Id.

While Petitioner was outside, the victim called Petitioner's wife, Becky Mata, to inquire if Petitioner had access to firearms. CT 326. A half hour later, Mata arrived at the residence and spoke to Petitioner. Id. Petitioner then reentered the residence and resumed yelling at the victim. Id. Once Petitioner left the residence, the victim called the police. Id. While the victim was on the phone with the police, Petitioner called the victim and reminded her that if he found out she was contacting the police he would kill her. Id. This phone call constitutes the factual allegation that supports count 6. Id.

Contrary to the probation report, however, at trial the victim testified that no threats were made prior to the phone call to Mata. RT 98-99 ("Q (prosecutor): [O]n the 15th of June . . . did he threaten you with injury before you called Becky Mata to ask about the gun?; A (victim): No, he just basically stated he would not leave unless I paid him the money."). The

victim testified that on June 15 she was cleaning her home when Petitioner entered the premises and demanded payment of $20,000.  RT 143-44.  Petitioner left the premises after he demanded she pay him the money.  RT 145.  During this initial contact, Petitioner is not alleged to have made any threats.  RT 98-99.

The victim then phoned Petitioner's wife, Becky Mata, and asked if Petitioner had access to any guns.  RT 145.  Mata claimed he did not.  See id.  Mata drove to the victim's property (where Petitioner was) and spoke to Petitioner.  RT 146.  Petitioner became enraged and entered the residence, being abusive towards the victim and her property.  RT 148. Petitioner again demanded $20,000, and the victim told Petitioner she would provide an accounting of her funds to show that she had paid more than $20,000 of Petitioner's expenses.  See id.  Petitioner then left the victim's home but remained on the property.  Id.

The victim spent about an hour preparing the accounting and Petitioner reentered the house.  RT 149.  Petitioner was still enraged and began to threaten the victim, throw items around the house and at her, and cause damage to the property.  RT 149-51.  These threats were the basis of the count 4 charge of criminal threats.  CT 325.

Petitioner pulled the telephone from the wall and threw it to the ground, telling the victim that if she called anyone or if he saw police he would kill her.  RT 152.  This threat appears to form the basis of the count 5 charge of dissuasion.

Petitioner then left, and the victim called the police.  Id.  While on the phone with the police, Petitioner phoned the victim and she told him to leave the property.  RT 153.  She did not tell him she was on the other line with the 911 operator.  RT 154.  Petitioner came back inside the house.  Id.  Petitioner did not make any remarks to the victim about calling anybody during this contact.  Id.  There was no testimony from the victim to support the dissuasion threat that constitutes the probation report's factual basis for count 6.  The testimony was that only one dissuasive threat was made by Petitioner on June 15th.  See RT

United States District Court
For the Northern District of California

1   152-54.  At no time did the victim suggest that a dissuasive threat was made more than once

2   that day.  See RT 139-227.[2]

3          Moreover, during closing argument, the prosecutor stated that "count 5 is dissuading

4   of a witness or victim that was alleged to have been taken place on May 30th" and that

5   "count 6 of dissuading a victim or witness . . . was alleged to have been taken place on June

6   15th."  RT 512-13.  In discussing jury instructions, the prosecutor again stated that "count 5,

7   alleged to have occurred, the witness intimidation, on May 30th."  RT 522.  The jury was

8   never asked to convict Petitioner on counts 5 and 6 for multiple threats made on June 15.

9          Thus, the State's argument as to the existence of two separate counts of dissuading a

10  witness, both on June 15, is not supported by the evidence presented at trial, nor by the

11  State's arguments at trial.

12         In supplemental briefing, the State conceded that "statements in the Probation Report

13  differed from the testimony at trial."  Docket No. 43 at 1.  The State also conceded that the

14  prosecutor "forgot" about the amendment to the Information that he had sought and was

15  granted, and thus made an erroneous argument during closing.  Id. at 1-2.  It nonetheless

16  argued that the evidence supports conviction on two separate threats of dissuading a witness

17  on June 15.  See id. at 2-4.  However, the State did not cite any new evidence not recounted

18  above; accordingly, this argument fails.

19         The State argued, too, that Petitioner's convictions on counts 5 and 6 are proper

20  because there were separate motivations behind Petitioner's threats; namely, "to extort

21  money, and later, to dissuade a witness from reporting or testifying."  Docket No. 43 at 3.

22  According to the State, Petitioner "was attempting both to extort [the victim] into giving him

23  money so he would leave her property, as well as to dissuade her from reporting the death

24  threats, [which] provides dual motivations that support the sentencing choice."  Id. at 4.  The

25

26

27         [2]  In addition, the prosecutor elicited other testimony consistent with the original
    Information– with one dissuasion occurring on May 30, 2002 and the second occurring on June
28  15, 2002.  The prosecution elicited testimony that, during the first altercation on May 30,
    Petitioner had threatened to kill the victim if she reported him to the police.  See, e.g., RT 88-89.

United States District Court
For the Northern District of California

State relies on a line of California cases holding that the prohibition on multiple punishments does not apply when a defendant has "separate objectives" for his criminal threat. Id. (citing People v. Nichols, 29 Cal. App. 4th 1651 (1994); People v. Saffle, 4 Cal. App. 4th 434 (1992)).

But counts 5 and 6 do not charge Petitioner with making criminal threats: they charge him with dissuasion. Under California law, dissuading a witness is a specific intent crime, requiring proof that the defendant "specifically intended to dissuade a witness from testifying." People v. Young, 34 Cal. 4th 1149, 1210-11 (2005) (citing CAL. PENAL CODE § 136.1). "Unless the actions or statements are meant to achieve the consequence of affecting a potential witness' testimony, no crime has been committed." People v. Ford, 145 Cal. App. 3d 985, 989 (1983). Therefore, this argument also fails.

The State also argued that Petitioner's multiplicity of punishment claim involves a "non-cognizable state law issue." Docket No. 23 at 9-10. In essence, the State argues that Petitioner's double jeopardy claim cannot be considered on federal habeas review because this Court may not grant relief for "state law errors in the application of sentencing law." Id. at 12. This argument is also unavailing. This case was not brought under state law; Petitioner has asserted that his conviction on counts 5 and 6 violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

Upholding Petitioner's conviction on both counts 5 and 6 would be "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(2). Because Petitioner was sentenced consecutively on both counts, the state court violated the Double Jeopardy Clause of the Fifth Amendment. Petitioner's habeas petition is GRANTED as to multiplicitous punishment on counts 5 and 6.

### 2.   *Counts 1 and 2*

Petitioner's convictions on count 1 (assault with a semi-automatic firearm) and count 2 (felon in possession of a firearm), in contrast, do not violate double jeopardy. The sentence for assault with a semi-automatic firearm was enhanced pursuant to California Penal Code § 12022.5(a)(1) which reads:

> . . .any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless the arming is an element of that offense. This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm.

As is apparent from a plain reading of the statute, there is no requirement that the offender be a felon; indeed, there is no discussion of status whatsoever. The enhancement punishes *any individual*, whether a felon or not, personally using a firearm in the commission of a felony or attempted felony. In contrast to § 12022.5(a)(1), the count 2 statute requires status as a felon. See CAL. PEN. CODE § 12021(a)(1). Unlike the count 1 conviction and enhancement, this statute addresses status and punishes possession of a weapon by a felon.

Each statute requires separate elements. The count 1 conviction required the state to prove that Petitioner personally used the firearm in the commission of a felony and the count 2 conviction required the state to prove that Petitioner was a felon who had a firearm in his possession. These separate elements satisfy the Blockburger test and therefore Petitioner's separate sentences do not run afoul of the double jeopardy guarantee.

        B.    Claim 3: Denial of Right to Jury Trial based on Trial Judge's Findings

Petitioner contends that his due process rights were violated when the trial judge, as opposed to the jury, made findings of aggravating factors at sentencing and used these factors to impose consecutive sentences. This issue was raised on direct appeal and the Court of Appeals denied the claim holding that Petitioner has no constitutional right to concurrent sentencing. See People v. Cochran, No. F043690, 2004 WL 2813614, *4-5. In arriving at Petitioner's sentence, the trial judge noted the following factors:

> There are aggravating factors in the case. The defense entered [*sic*] 245(b) and also the 422 conviction involved threat of great bodily harm, and those do show a high degree of cruelty or callousness on the part of Mr. Cochran. And he did take advantage of a position of trust or confidence in the sense he had free access to Ms. Cochran's unit, and that's how he got in; in other words, he was free to come and go, and he was able to commit those crimes, at least in part, because of his ability to move freely from his unit that was on her property to her unit. This is the second incident of serious violent conduct and that's an aggravating factor also. And he's been on parole before and returned to custody at least once, so that's an aggravating factor. So I noted four aggravating factors. There are no mitigating factors with respect to either the defendant or the nature of the crime.

1   Thus, the four aggravating factors were: (1) high degree of cruelty or callousness; (2) taking

2   advantage of a position of trust or confidence; (3) second incident of serious violent conduct;

3   and (4) returned to custody while on parole.  Petitioner claims that the use of factors that were

4   not found by the jury, or admitted by himself, to impose a consecutive sentence violated his

5   right to a trial by jury.

6         The Supreme Court has held that it is unconstitutional for a legislature to remove from

7   the jury the assessment of facts that increase the prescribed range of penalties to which a

8   criminal defendant is exposed.  "Other than the fact of a prior conviction, any fact that

9   increases the penalty for a crime beyond the prescribed statutory maximum must be submitted

10  to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466,

11  488-90 (2000) (finding unconstitutional state law that permitted judge to imposed extended

12  term of imprisonment if he found by a preponderance of the evidence that the crime

13  committed was a "hate crime").[3]  Failure to submit a sentencing factor to the jury, like failure

14  to submit an element to the jury, is not structural error; therefore, it is subject to harmless-

15  error analysis.  Washington v. Recuenco, 548 U.S. 212, 222 (2006); Zepeda-Martinez, 470

16  F.3d at 913.  However, the application of Apprendi is limited to sentencing decisions

17  historically reserved for the jury.  See Oregon v. Ice, 129 S. Ct. 711, 717-18 (2009) (declining

18  to extend Apprendi to a state's sentencing system that gives judges discretion to determine

19  facts allowing imposition of consecutive or concurrent sentences for multiple offenses, noting

20  that determination of consecutive versus concurrent sentences is traditionally not within the

21  function of the jury).

22        Here, the aggravating factors were not used to impose sentences above the statutory

23  maximum, but were used to impose consecutive sentences, thus Apprendi does not apply.  See

24  Oregon v. Ice, 129 S. Ct. at 717-18.  Accordingly, there was no error by the trial judge in

25  using the aggravating factors and the Court of Appeals decision was not clearly erroneous.

26

27  ───────────────

28        [3]Apprendi announced a new constitutional rule of criminal procedure that does not apply
    retroactively on initial collateral review.  United States v. Sanchez-Cervantes,
    282 F.3d 664, 665 (9th Cir. 2002).

United States District Court
For the Northern District of California

C.    Claim 4: Conviction Based on Insufficient Evidence

Petitioner next claims that he was denied his right to due process and equal protection in violation of the Fifth, Sixth, and Fourteenth Amendments because the evidence used to convict him on count 2 was insufficient to prove that he possessed and owned a firearm. Petitioner claims that because he did not own the firearm, he cannot be found guilty of violating California Penal Code § 12021(a)(1).  This issue was not raised on direct appeal; accordingly, this Court conducts "an independent review of the record to determine whether the state court's decision was objectively unreasonable." Sass, 461 F.3d at 1127.

This argument lacks merit.  California Penal Code § 12021(a)(1) has three status elements and four act elements.  The statute requires that the state prove: (1) prior felony conviction or (2) conviction of offense listed in § 12001.6 or (3) addiction to a narcotic drug; *and* that the individual (1) own, (2) purchase, (3) receive, *or* (4) possess or control or have custody of a firearm.  Only one status element and one act element is required to offend the statute.  Petitioner's reading fails because the act requirements are separated by an "or" rather than an "and."  Petitioner need not be convicted of *owning and possessing* a firearm as he contends, mere possession is sufficient.  The jury found that Petitioner was in possession of a firearm, and thus ownership is not relevant.

D.    Claim 5: Violation of Confrontation Right Due to Hearsay Testimony

Next, Petitioner contends that hearsay testimony was admitted at trial which violated his "right to due process, equal protection and to confront and cross-examine his accuser" because "limiting instructions do not safeguard confrontation rights when the jury is presented with prejudicial and inflammatory hearsay evidence."  At trial, the court allowed the state to introduce the testimony of Mrs. Cochran that Petitioner was involved with acts of violence on his former and current girlfriends and/or wives.  Petitioner claims this testimony was hearsay and caused a substantial and injurious effect that denied his due process right to a fair trial.

The California Court of Appeals concluded the evidence was submitted for the limited purpose of establishing Mrs. Cochran's "sustained fear," thus the testimony did not qualify as hearsay because it was not admitted to prove the truth of the statements. See Cochran, No.

1   F043690, 2004 WL 2813614 at *2.  This conclusion is not contrary to, nor an unreasonable

2   application of, Federal law.

3        A person in custody pursuant to the judgment of a state court can obtain a federal writ

4   of habeas corpus only on the ground that he is in custody in violation of the Constitution or

5   laws or treaties of the United States.  28 U.S.C. § 2254(a).  A state court's evidentiary ruling

6   therefore is not subject to federal habeas review unless the ruling violates federal law, either

7   by infringing upon a specific federal constitutional or statutory provision or by depriving the

8   defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465

9   U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

10       The admission of Mrs. Cochran's testimony regarding the past acts of domestic

11  violence did not violate Petitioner's constitutional rights nor did it render the trial

12  fundamentally unfair.  Petitioner was charged with criminal threats in violation of California

13  Penal Code § 422.  The California Supreme Court has explained that

14   In order to prove a violation of section 422, the prosecution must establish all of the
     following: (1) that the defendant willfully threaten[ed] to commit a crime which will
15   result in death or great  bodily injury to another person, (2) that the defendant made the
     threat with the specific intent that the statement . . . is to be taken as a threat, even if
16   there is no intent of actually carrying it out, (3) that the threat – which may be made
     verbally, in writing, or by means of an electronic communication device – was on its
17   face and under the circumstances in which it [was] made, . . . so unequivocal,
     unconditional, immediate, and specific as to convey to the person threatened, a gravity
18   of purpose and an immediate prospect of execution of the threat, (4) that the threat
     actually caused the person threatened to be in sustained fear for his or her own safety
19   or for his or her immediate family's safety, and (5) that the threatened person's fear
     was reasonabl[e] under the circumstances.
20

21  People v. Toledo, 26 Cal. 4th 221, 227-28 (2001).  All of Mrs. Cochran's alleged hearsay

22  testimony was offered for the nonhearsay purpose of establishing that she was in actual

23  sustained fear for her safety and that the fear was reasonable.  See People v. Hill, 3 Cal.

24  4th 959, 987 (1992) (explaining that statements offered to explain declarant's state of mind

25  and conduct, rather than offered to prove truth, are not hearsay).  Mrs. Cochran was stating

26  that she had reason to believe Petitioner was involved in domestic violence with his past

27  girlfriends and wives, thus she had reason to fear his threats.  The jury did not need to believe

28  the truth of the statements Mrs. Cochran testified to hearing, they only needed to believe that

**United States District Court**
For the Northern District of California

14

United States District Court
For the Northern District of California

1 those statements caused Mrs. Cochran to be fearful.

2       Because the testimony was not hearsay, the testimony did not violate Petitioner's

3 rights and thus this claim fails.  Moreover, the trial court explicitly limited the jury's

4 consideration of the testimony to the purpose of illustrating Mrs. Cochran's state of mind.

5       E.       Claim 6: Evidentiary Error by Trial Court

6       Similar to claim 5, Petitioner contends that the trial court erred by admitting Mrs.

7 Cochran's testimony regarding three unexplained fires that occurred on her property or to

8 Petitioner's property.  Petitioner asserts that this testimony, coupled with the domestic

9 violence testimony from claim 5, was inadmissible hearsay, prejudicial, and unproven;

10 therefore its admission denied him the right to a fair trial and to confront and cross-examine

11 his accusers.  For the same reasons that the domestic violence testimony did not qualify as

12 hearsay, so too does the arson testimony fail to qualify as hearsay.  See id.  One of Petitioner's

13 threats to Mrs. Cochran was to burn down her house; the fires were relevant to show that Mrs.

14 Cochran feared Petitioner would carry out this threat, that her fear was sustained, and that her

15 fear was reasonable.

16       F.       Claim 7: Prosecutorial Misconduct

17       Petitioner next argues that the state engaged in multiple acts of prosecutorial

18 misconduct that resulted in an unfair trial.  Specifically, Petitioner contends that the state

19 introduced prejudicial evidence that had been excluded during *in limine* and that the state

20 knowingly put on perjured testimony.

21       Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate

22 standard of review is the narrow one of due process and not the broad exercise of supervisory

23 power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process

24 rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."

25 See id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis

26 in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of

27 the prosecutor").  The first issue is whether the prosecutor's conduct was improper; if so, the

28 next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413

**United States District Court**
For the Northern District of California

F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.) (citation omitted), cert. denied, 516 U.S. 1017 (1995).

To prevail on such a claim, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material.  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at 269-71).  "Material" means that there is a reasonable likelihood that the false evidence or testimony could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

### 1.    *Violation of* In Limine *Orders*

Petitioner contends the prosecutor knowingly violated two *in limine* orders issued by the trial court.  First, Petitioner argues that the prosecutory knowingly introduced evidence regarding his prior kidnapping conviction in violation of an *in limine* order.  Second, Petitioner alleges that the prosecutor knowingly introduced testimony linking him to the gun used in count 1 in violation of an *in limine* order.

#### (a) Past Kidnapping Conviction

During a pretrial evidentiary hearing, the trial judge ruled certain statements regarding Petitioner's past convictions as prejudicial, thus only allowed the testimony in if it was sanitized to limit the possibility of prejudice.  The *in limine* order was designed to allow Mrs. Cochran to explain why she was in fear of Petitioner's threats, while not revealing his prior conviction for kidnapping (which formed part of the basis of Mrs. Cochran's fear).  During her testimony, Mrs. Cochran stated that Petitioner was convicted of kidnapping, in violation of the *in limine* order.

However, the record illustrates that the trial judge determined the violation was an inadvertent statement made by a witness and did not ascribe any misconduct to the prosecutor. The trial judge explained: ". . . there was no question in my mind that Mrs. Cochran was just

testifying as to what she recollected, and there's no – certainly no indication of any wrongdoing on the part of the People, it's just something that came out." (RT 134).  The state court's finding of no imporper conduct was not clearly erroneous.

Moreover, to cure any possible defect, the trial judge issued limiting instructions to the jury explaining that the testimony of Mrs. Cochran was limited to a narrow purpose and could not be used for any other purpose.  The trial court explicitly told the jury:

> Certain evidence was admitted for a limited purpose. Mrs. Cochran's testimony about previous fires in 1987, December 23, 1999, and December 2000 all fall into this category. The same is true as to the testimony of Mrs. Cochran that Billy Coy Cochran was involved with acts of violence on Leslie Vercoe, Sandra Cochran, and Becky Mata. The testimony is admissible only for the limited purpose of establishing if you believe the testimony that Donna Cochran was in fear of Billy Coy Cochran. Do not consider this evidence for any purpose except the limited purpose for which it was admitted.

This curative instruction was sufficient to ensure the fairness of the trial.  See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (When a curative instruction is issued, a court presumes that the jury has disregarded inadmissable evidence and that no due process violation occurred); Darden, 477 U.S. at 182 (the Court condemned egregious, inflammatory comments by the prosecutor but held that the trial was fair since curative action were taken by the trial judge).

(b) Gun

Petitioner also alleges the violation of a second *in limine* order when the prosecutor elicited testimony regarding how Petitioner came to possess the firearm used in the count 1 conviction.  The court had previously ruled that a deputy could not testify that Mrs. Cochran had told him Petitioner's wife supplied Petitioner with the firearm, holding the statement as hearsay not offered by the original declarant.  However, the court explained that if Mrs. Cochran had personal knowledge that Petitioner's wife was supplying him with guns that it would be admissible. During trial, the prosecutor questioned Mrs. Cochran, among others, regarding guns and none of the questions violated the court's *in limine* order regarding the hearsay report.  Thus Petitioner's allegation must fail.

2.  *Perjury*

Petitioner's remaining charges of prosecutorial misconduct center on allegations of subornation of perjury.

Petitioner claims that the prosecutor knew, or should have known, that the state's chief witness proffered perjured testimony on the stand.  This claim fails because Petitioner

United States District Court
For the Northern District of California

provides no support, and there is no evidence in the record, that the prosecutor knew of the perjury.  A bare allegation that false or perjured testimony was introduced, without a showing that the prosecution knew of its falsehood, is not sufficient for relief.  See Morales v. Woodford, 336 F.3d 1136, 1152 (9th Cir. 2003).

### 3. Other Claims

Petitioner's remaining allegations of prosecutorial misconduct are without merit. Many of Petitioner's allegations are unsworn statements, proffered after the fact, to disprove the testimony elicited at trial.

### G. Claim 8: Ineffective Assistance of Trial Counsel

Petitioner claims ineffective assistance of trial counsel because his trial attorney failed to object based on claims 1-7 above; suborned perjury; failed to call an alibi witness; failed to move to suppress a handgun; and failed to prove his factual innocence and the victim's financial motive to fabricate the charges against him.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.  The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction.  See Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  The state court did not issue a reasoned analysis of Petitioner's allegations of

1  ineffective assistance of counsel, thus this Court conducts "an independent review of the

2  record." See Sass, 461 F.3d at 1127.

3        *1.    Counsel's Failure to Address Claims 1-7*

4        The claims above each fail, thus there is no claim for ineffective assistance of counsel

5  premised on claims 1-7.

6        *2.    Counsel's Subornation Perjury*

7        Petitioner claims that his trial counsel engineered the perjury of Petitioner's wife, she

8  was then impeached on the stand, and because she was his sole alibi witness the loss of her

9  credibility greatly prejudiced his case.

10        These allegations are wholly unsubstantiated by the record.  Under the standard of

11  review established by 28 U.S.C. § 2254 this Court must assess the claims "in light of the

12  record the [state] court had before it."  Holland v. Jackson, 542 U.S. 649, 652 (2004).  An

13  ambiguous or silent record cannot disprove the strong presumption of competence afforded to

14  trial counsel.  Chandler v. U.S., 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc).  Here,

15  the record is silent regarding trial counsel's alleged subornation of perjury.  The only support

16  for such a claim is Petitioner's own allegations.

17        *3.    Counsel's Failure to Call Alibi Witness*

18        Petitioner also claims that his trial counsel should have called his step-daughter, Emily

19  Mata, as an alibi witness.  This witness allegedly would have testified that she was with

20  Petitioner during the time one of the incidents took place and that they were at an amusement

21  park.  Nothing in the record substantiates Petitioner's claim that Emily would have provided

22  exculpatory evidence.  Once again, we are only provided Petitioner's own, unsubstantiated

23  allegations.

24        *4.    Counsel's Failure to Suppress the Handgun*

25        Petitioner claims that his trial counsel erred by failing to move to suppress the handgun

26  found in his residence.  Petitioner contends that the search that uncovered the gun was illegal

27  and a violation of his Fourth Amendment right.

28        The record shows that the gun was found by Petitioner's mother using a key that

**United States District Court**
For the Northern District of California

19

United States District Court
For the Northern District of California

1  Petitioner had himself provided her.  Further, the trailer in which Petitioner resided was

2  located on his mother's property.  Thus the mother (a private party) entered a trailer on her

3  own property, using a key given to her by Petitioner, and found the gun.  See United States v.

4  Jacobsen, 466 U.S. 109, 113-118 (1984) (explaining that even unreasonable searches by

5  private parties do not frustrate the Fourth Amendment guarantee against unreasonable search

6  and seizure).  There is no evidence in the record that she was acting as an agent of the

7  government.  As such, it is unlikely a court would have suppressed the handgun and thus there

8  was no error or prejudice under the Strickland standard.

9          *5.    Counsel's Failure to Move to Strike Petitioner's Prior Conviction*

10        Petitioner claims ineffective assistance of counsel because his attorney failed to move

11  the court to look at the underlying facts of his prior kidnapping conviction and rule the

12  conviction unconstitutional.  Petitioner claims that the conviction was unconstitutional

13  because (1) he was not advised that a sentence of three years on parole and payment of

14  restitution would directly result from his plea bargain' and (2) he entered a plea to kidnapping

15  (as opposed to attempted kidnapping, for which he was arraigned).  His trial attorney, in this

16  case, Petitioner asserts, should have raised these infirmities regarding his kidnapping

17  conviction with the trial court and failure to do so amounted to ineffective assistance of

18  counsel.

19        The United States Supreme Court has held that a criminal defendant may challenge the

20  constitutional validity of a prior conviction only on the ground that the defendant was denied

21  his or her right to representation.  Custis v. United States, 511 U.S. 485, 496 (1994).  In Custis

22  the Court refused to extend the right to collaterally attack prior convictions used for sentence

23  enhancements beyond the right to have appointed counsel.  Id.  The defendant in Custis

24  claimed that his prior conviction was infirm due to "the denial of the effective assistance of

25  counsel, that his guilty plea was not knowing and intelligent, and that he had not been

26  adequately advised of his rights in opting for a 'stipulated facts' trial."  Id.  The Court,

27  however, disagreed, explaining that "[n]one of these alleged constitutional violations rise[] to

28  the level of jurisdictional defect resulting from the failure to appoint counsel."  Id.; see also

1  Garcia v. Superior Court, 14 Cal. 4th 953, 956 (1997) (applying Custis to California state

2  sentencing).  Thus, this claim fails.

3            6.      *Petitioner's Remaining Ineffective Assistance Claims*

4        Petitioner's remaining claims regarding ineffective assistance of trial counsel all lack

5  merit.  The bulk of these claims are little more than unsubstantiated allegations and many of

6  the exhibits Petitioner uses to support his allegations are irrelevant to Petitioner's guilt or

7  innocence.

8        H:      Claim 9: Ineffective Assistance of Appellate Counsel

9        Petitioner claims ineffective assistance of appellate counsel because his appellate

10 attorney failed to raise claims 1 and 2 on direct appeal.  Claims of ineffective assistance of

11 appellate counsel are reviewed according to the standard set out in Strickland.  See United

12 States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  The Court finds that appellate counsel's

13 advice did not fall below an objective standard of reasonableness under Strickland.

14                                   **CONCLUSION**

15       After a careful review of the record and pertinent law, the Court is satisfied that the

16 petition for a writ of habeas corpus must be GRANTED as to counts 5 and 6 and DENIED on

17 all other grounds.

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28

**United States District Court**
For the Northern District of California

21

1    The clerk shall enter judgment accordingly.

2    **IT IS SO ORDERED.**

3

4



5    Dated: January 25, 2010

6                                 CHARLES R. BREYER

7                                 UNITED STATES DISTRICT JUDGE

8

9

10

11   G:\CRBALL\2006\0909\Drafts of Order\Cochran_HC_DENY in part - GRANT in part .wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California